1   **WO**

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                        **FOR THE DISTRICT OF ARIZONA**

8

9    Barbara Hartmann,                          No. CV-22-01961-PHX-DJH

10                    Plaintiff,                 **ORDER**

11   v.

12   CitiBank NA, et al.,

13                    Defendants.

14

15          Defendant Citibank, N.A. ("Defendant") has filed a Motion to Compel Arbitration

16   (Doc. 21).    Defendant seeks to compel arbitration of Plaintiff Barbara Hartmann's

17   ("Plaintiff") claims related to her credit card account held by Defendant.[1]  (*Id.*)  Defendant

18   also seeks to stay this action until the arbitration proceeding is completed.  (*Id.*)

19          The Court must now decide whether a valid Arbitration Agreement exists.  It does.

20   So, the Court grants Defendant's Motion to Compel.

21   **I.     Background**

22          On or about January 26, 2020, Plaintiff opened a Home Depot credit card in a Home

23   Depot store.  (Doc. 21 at 14, ¶ 4).  Defendant is the owner and servicer of Home Depot-

24   branded credit card accounts.  (*Id.* at 13, ¶ 1).  Plaintiff's Card Agreement outlined the

25   terms of her account, which contained an Arbitration Agreement.  (*Id.* at ¶ 5).  Plaintiff

26   states that at the time she opened her credit card account, she was neither informed nor

27   received a copy of the Arbitration Agreement.  (Doc. 24-1 at ¶ 7, 8).  Defendant states it

28   _____

[1] The matter is briefed.  Plaintiff filed a Response (Doc. 24), and Defendant filed a Reply (Doc. 27).

provided the Card Agreement when the account was opened in January 2020.  (Doc 21 at 14, ¶ 6).  It is uncontested that Plaintiff used the credit card after the account was opened.  (*Id.* at 15, ¶ 9; 39).  Defendant claims its records indicate that Plaintiff did not choose to reject the Arbitration Agreement.  (*Id.* at ¶ 8).  Plaintiff claims she closed the account on May 14, 2020, leaving no balance on the card.  (Doc 24-1 at ¶ 6).

On November 17, 2022, Plaintiff filed suit against Defendant under the Fair Credit Reporting Act ("FCRA") 15 U.S.C. § 1681 because of an alleged incorrect reporting on her credit reports.  (Doc. 1).  Defendant requested Plaintiff submit to arbitration.  (Doc. 24-2 at ¶ 3).  Plaintiff denied signing the Arbitration Agreement and requested documentation proving otherwise.  (*Id.* at ¶¶ 4, 5).  Defendant provided an exemplar of the Card Agreement Plaintiff received when she applied for the credit card.  (*Id.* at ¶ 6).  Defendant then filed a motion to compel Plaintiff's claims into arbitration.  (Doc. 21).

## II.    Legal Standard

The Federal Arbitration Act ("FAA") allows "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States District Court . . . for an order directing that . . . arbitration proceed in the manner provided for in [the arbitration] agreement." 9 U.S.C. § 4.  If a party has failed to comply with a valid arbitration agreement, the district court must compel arbitration.  *Id.*  The district court must also stay the proceedings pending resolution of the arbitration at the request of one of the parties bound to arbitrate.  *Id.* at § 3.

In determining whether to compel arbitration, the court must limit its review to (1) whether a valid agreement to arbitrate exists and, if so, (2) whether the agreement encompasses the dispute at issue.  *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).  If the answer is affirmative on both queries, then the court must enforce the arbitration agreement in accordance with its terms.  *Id.* at 1130.  If a genuine dispute of material fact exists as to these queries, a court should apply a "standard similar to the summary judgment standard of [Federal Rule of Civil Procedure 56]." *Concat LP v. Unilever, PLC*, 350 F. Supp. 2d 796, 804 (N.D. Cal. 2004).

Arbitration agreements governed by the FAA are presumed to be valid and enforceable. *See Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 226–27 (1987). The party opposed to arbitration bears the burden of showing the arbitration agreement is invalid or does not encompass the claims at issue. *See Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 92 (2000).

## III.   Discussion

Defendant moves to compel arbitration based on the Arbitration Agreement contained in Plaintiff's Card Agreement. (Doc. 21 at 23). Before the Court can determine whether a valid Arbitration Agreement exists, the Court must first determine what substantive law applies—that is, whether Arizona or South Dakota law governs Plaintiff's Arbitration Agreement.

### A.   Choice-of-Law

Defendant argues South Dakota law applies based on Arizona's choice-of-law rules. (Doc. 21 at 7). Plaintiff argues that Arizona law applies because the Card Agreement "was entered into in Arizona." (Doc. 24 at 6). Generally, a federal court sitting in diversity applies the choice-of-law rules of the state in which it sits. *Schoenberg v. Exportadora de Sal, S.A. de C.V.*, 930 F.2d 777, 782 (9th Cir.1991). But jurisdiction in this case is based on federal question, not diversity. Thus, federal common law applies to the choice-of-law rule determination. *See id.*; *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006) (federal common law choice-of-law rules apply where jurisdiction is not based on diversity of citizenship). Federal common law follows the approach of the Restatement (Second) of Conflict of Laws (the "Restatement"). *Huynh*, 465 F.3d at 997.

Under the Restatement, the parties' choice-of-law provision "govern[ing] their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue." Restatement (Second) of Conflicts of Laws § 187(1) (1988). Courts should adhere to the parties' choice unless "the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice" or "application of

1    the law of the chosen state would be contrary to a fundamental policy of a state which has

2    a materially greater interest than the chosen state in the determination of the particular

3    issue" and that state "would be the state of the applicable law in the absence of an effective

4    choice of law by the parties." *See id.* § 187(2).

5         Here, the parties' Card Agreement contains a choice-of-law provision stating

6    "[f]ederal law and the law of South Dakota, where we are located, govern the terms and

7    enforcement of this Agreement." (Doc. 21 at 24). South Dakota also has a "substantial

8    relationship" with Defendant because Defendant is located there. *See Daugherty v.*

9    *Experian Info. Sols., Inc.*, 847 F. Supp. 2d 1189, 1195 (N.D. Cal. 2012) (finding South

10   Dakota law applied under Citibank's choice of law provision); *see also Cayanan v. Citi*

11   *Holdings, Inc.*, 928 F. Supp. 2d 1182, 1193–94 (S.D. Cal. 2013) (same); *Hartranft v.*

12   *Encore Cap. Grp., Inc.*, 543 F. Supp. 3d 893, 913 (S.D. Cal. 2021) (same). Last, Plaintiff

13   has not argued that South Dakota law is contrary to a fundamental policy of Arizona. (*See*

14   Doc. 24). The Court will therefore apply South Dakota law to determine whether the

15   Arbitration Agreement is valid.

16       **B.  Whether the Arbitration Agreement is Valid**

17       Plaintiff contends that Defendant's Motion to Compel Arbitration should be denied

18   because a valid Arbitration Agreement does not exist. (Doc. 24 at 4). Plaintiff says she

19   never signed an Arbitration Agreement and thus the first query under *Chiron* is not

20   satisfied. (*Id.*) Plaintiff alternatively contends that even if a valid Arbitration Agreement

21   exists, the Agreement is procedurally and substantively unconscionable. (*Id.*) She says

22   the Agreement is procedurally unconscionable because she is disabled, and Defendants did

23   not present her with the Arbitration Agreement. (*Id.* at 6). Plaintiff also says the

24   Agreement is substantively unconscionable because it imposes South Dakota law on

25   consumers and "attempts to preclude [her] from applying the laws of the state in which the

26   contract was entered into." (*Id.* at 7). The Court will address each argument in turn.

27       **1.  Whether Plaintiff Entered into the Arbitration Agreement**

28       Plaintiff claims she never signed the Card Agreement that contained the Arbitration

Agreement and thus a contract was never formed.  (Doc. 24-1 at ¶ 7–10).  Under South Dakota law, however, "use of an accepted credit card or the issuance of a credit card agreement and the expiration of thirty days from the date of issuance without written notice from a card holder to cancel the account creates a binding contract between the card holder and the card issuer . . . ." S.D. Codified Laws § 54-11-9.  It is undisputed that Plaintiff opened and used the credit card.  (Doc. 1 at ¶ 20).  It also undisputed that her Card Agreement stated "[t]his Agreement is binding on you unless you close your account within 30 days after receiving the card and you *have not used* or authorized use of the card."  (Doc. 21 at 20) (emphasis added).  Therefore, Plaintiff's use of her credit card and lack of closing her account within 30 days constitutes acceptance of the terms in the Card Agreement, which contained the Arbitration Agreement.  *See Cayanan*, 928 F. Supp. 2d at 1199 (holding that under South Dakota law "continued use of a credit [card] account" constitutes assent to arbitration).

Plaintiff further claims she does not "recall receiving any correspondence or other notice from [Defendants] . . . [regarding] any documents that contained arbitration provisions . . . ."  (Doc. 24-1 at ¶ 10).  But numerous courts have found the same Card Agreement valid and enforceable, despite objections that the Card Agreement was not signed or sent to them.  *See Hartranft*, 543 F. Supp. 3d 893 at 920 (rejecting plaintiff's contention that he did not recall receiving the agreement to arbitrate because plaintiff "used his card following receipt of the new terms"); *see also In re Midland Credit Mgmt., Inc. Tel. Consumer Prot. Litig.*, 2019 WL 398169, at *5 (S.D. Cal. Jan. 31, 2019) (same); *Cayanan*, 928 F. Supp. 2d at 1196 (same).  Following suit, Plaintiff's purported lack of memory is insufficient to render the Arbitration Agreement invalid.  The Court therefore finds a valid Arbitration Agreement exists.

Having concluded that a valid Arbitration Agreement exists, the Court next considers whether the Arbitration Agreement is procedurally or substantively unconscionable.

/ / /

- 5 -

1

2
**2. Whether the Arbitration Agreement is Procedurally or Substantively Unconscionable**

3
South Dakota law requires a showing of both procedural and substantive

4
unconscionability for an arbitration agreement to be unenforceable. *See Hoffman v.*

5
*Citibank (S. Dakota), N.A.*, 546 F.3d 1078, 1083 n.2 (9th Cir. 2008) (per curiam).

6
Procedural unconscionability focuses on the fairness of the bargaining process. *Johnson*

7
*v. John Deere Co.*, 306 N.W.2d 231, 236 (S.D. 1981); *Tompkins v. 23andMe, Inc.*, 840

8
F.3d 1016, 1023 (9th Cir. 2016).  Substantive unconscionability focuses on whether the

9
contract had harsh or one-sided terms. *Johnson*, 306 N.W.2d at 237; *Davis v. O'Melveny*

10
*& Myers*, 485 F.3d 1066, 1075 (9th Cir. 2007).

11
As to procedural unconscionability, Plaintiff argues the bargaining process was

12
unfair because she is disabled.  (Doc. 24 at 7).  Her Complaint, however, contains no

13
allegations regarding her disability.  Nor does Plaintiff provide any evidence showing how

14
her disability impacted her credit card application.  (*See* Doc. 1).  Plaintiff also asserts she

15
does not recall receiving the Arbitration Agreement and, without having seen it, this

16
eliminated her ability to bargain.  (Doc. 24 at 7).  But this does not render the Arbitration

17
Agreement procedurally unconscionable.  Indeed, "numerous courts facing the same

18
Citibank Card Agreement have enforced it despite the fact that the plaintiff and party

19
objecting to arbitration never signed the agreement." *See Hartranft*, 543 F. Supp. 3d at

20
920; *see also supra* III.B(1).

21
As to substantive unconscionability, Plaintiff contends the Arbitration Agreement

22
is unreasonable because it imposes South Dakota law on consumers and "attempts to

23
preclude [them] from applying the laws in the state in which the contract was entered into."

24
(*Id.*)  The Court already determined that South Dakota has a substantial relationship with

25
Defendant because that is where Defendant is located.  Moreover, countless courts have

26
affirmed the application of South Dakota law to Defendant's Card Agreement. *See supra*

27
III.A.

28
In sum, Plaintiff entered into the Arbitration Agreement by using her credit card and

1    has otherwise not met her burden to show the Agreement is procedurally and substantively
2    unconscionable.  The Court therefore concludes the Arbitration Agreement is enforceable.

3    **C. Whether the Arbitration Agreement encompasses the dispute at issue**

4           Having determined that the Arbitration Agreement is enforceable, the remaining
5    question is whether the Arbitration Agreement encompasses the dispute at issue.  *Chiron*
6    *Corp.*, 207 F.3d at 1130.  Defendant argues Plaintiff's claims fall within the scope of the
7    Arbitration Agreement because any claims asserted against them arise from Plaintiff's use
8    of the credit card and/or her relationship with Defendant.  (Doc. 21 at 9).  Plaintiff does not
9    dispute Defendants' position.  (Doc. 24).

10          The Arbitration Agreement states that "all Claims are subject to arbitration, no
11   matter what legal theory they're based on or what remedy (damages, or injunctive or
12   declaratory relief) they seek, including Claims based on contract, tort (including intentional
13   tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other
14   sources of law . . . ."  (Doc. 21 at 23).  Plaintiff filed suit under the FCRA because of an
15   alleged adverse reporting on her credit reports.  (Doc. 1).  That credit card account was
16   serviced by Defendants.  (*Id.*)  The Court therefore finds the Arbitration Agreement
17   encompasses Plaintiff's claims and Defendant's alleged conduct that form the basis for this
18   action.

19   **D. Motion to Stay Proceedings**

20          Defendant also moved to stay this action until the arbitration proceeding is
21   completed.  The FAA provides that the court "shall on application of one of the parties stay
22   the trial of the action until such arbitration has been had in accordance with the terms of
23   the agreement."  9 U.S.C. § 3; *see also Leicht v. Bateman Eichler, Hill Richards, Inc.*, 848
24   F.2d 130, 133 (9th Cir. 1988).  The Court will therefore grant Defendant's request.

25          Accordingly,

26          **IT IS HEREBY ORDERED** that Defendant CitiBank NA's Motion to Compel
27   Arbitration (Doc. 21) is **granted**.

28          **IT IS FURTHER ORDERED** that Defendant's Motion to Stay (Doc. 21)

proceedings is **granted**.  This action is **stayed only to Citibank NA** pending completion of arbitration.

IT IS FINALLY ORDERED that the parties shall submit a status report on October 10, 2023, and every **sixty (60) days** thereafter and **within five (5) days** of a decision by the arbiter.

Dated this 10th day of August, 2023.

Honorable Diane J. Humetewa
United States District Judge